IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CEDRIC NTUK, JOHN CLARK, DRACHAN JOHNSON, and KEVIN MALLARD on behalf of themselves and all others similarly situated, §§§§§§§§ Plaintiffs, § § v. § TAYLOR SMITH CONSULTING, LLC, § and TRACY T. SMITH, §§ Defendants. § | CIVIL ACTION NO. H-16-1165 |

## MEMORANDUM OPINION AND ORDER

Pending before the court[1] is Plaintiffs' Motion to Certify Class (Doc. 21). The court has considered the motion, all other relevant filings, and the applicable law. For the reasons set forth below, the court **GRANTS** Plaintiffs' motion.

### I. Case Background

Cedric Ntuk, John Clark, Drachan Johnson, and Kevin Mallard ("Plaintiffs") filed this action against Taylor Smith Consulting, LLC and Tracy T. Smith ("Defendants") under the Fair Labor Standards Act ("FLSA").[2] Plaintiffs alleged that Defendants misclassified them as exempt employees under the FLSA and failed to

---

[1] The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. See Doc. 9, Ord. Dated July 15, 2016.

[2] See Doc. 19, Pls.' 2d Am. Compl. p. 1.

pay overtime.³

A. **Factual Background**

Taylor Smith Consulting, LLC, is a domestic limited liability company that provides full service staffing, contracting, and management consulting to customers throughout the United States and Texas.⁴ Plaintiffs worked for Defendants at the Pasadena Waste Management site as onsite supervisors between October 2014 and April 2016.⁵

Along with this motion, Plaintiffs submitted their own declarations alleging that they and other similarly situated employees were entitled to overtime compensation under the FLSA.⁶ The following facts are derived from these declarations and Plantiffs' second amended complaint.

During the relevant time period, Defendants compensated Plaintiffs with a flat salary on a weekly basis.⁷ Defendants regularly required them to work on weekends at the discretion of a

---

³ See id. p. 2.

⁴ See id. p. 4.

⁵ See Doc. 21-1, Ex. A to Pls.' Mot. to Certify Class, Decl. of Cedric Ntuk ¶ 3; Doc. 21-2, Ex. B to Pls.' Mot. to Certify Class, Decl. of John Clark ¶ 3.

⁶ See Doc. 21-1, Ex. A to Pls.' Mot. To Certify Class, Decl. of Cedric Ntuk; Doc. 21-2, Ex. B to Pls.' Mot. to Certify Class, Decl. of John Clark; Doc. 21-3, Ex. C to Pls.' Mot. to Certify Class, Decl. of Kevin Mallard.

⁷ See Doc. 21-1, Ex. A to Pls.' Mot. To Certify Class, Decl. of Cedric Ntuk ¶ 5; Doc. 21-2, Ex. B to Pls.' Mot. to Certify Class, Decl. of John Clark ¶ 5; Doc. 21-3, Ex. C to Pls.' Mot. to Certify Class, Decl. of Kevin Mallard ¶ 5.

supervisor and failed to pay Plaintiffs for any work time exceeding forty hours per week.[8] Plaintiffs, as onsite supervisors, were required to work sixty hours per week.[9] When Plaintiffs asked about overtime compensation, representatives of Defendants claimed that onsite supervisors were exempt employees and thus not entitled to overtime.[10] Defendants offered no further justification for categorizing onsite supervisors as exempt.[11]

All onsite supervisors shared similar responsibilities, including assigning helpers to assist residential waste collection trucks and observing and reporting the activities of helpers.[12] The duties of onsite supervisors also included, but were not limited to, keeping a log of the garbage trucks, ensuring that the helpers were properly attired, and verifying payroll.[13] There was no distinction in duties, responsibilities, or obligations between the work Plaintiffs performed on the weekend and the work they

---

[8] See Doc. 21-1, Ex. A to Pls.' Mot. To Certify Class, Decl. of Cedric Ntuk ¶¶ 5-6; Doc. 21-2, Ex. B to Pls.' Mot. to Certify Class, Decl. of John Clark ¶¶ 5-6; Doc. 21-3, Ex. C to Pls.' Mot. to Certify Class, Decl. of Kevin Mallard ¶¶ 5-6.

[9] See Doc. 19, Pls.' 2ᵈ Am. Compl. p. 5.

[10] See id.

[11] See id.

[12] See Doc. 21-1, Ex. A to Pls.' Mot. To Certify Class, Decl. of Cedric Ntuk ¶ 4; Doc. 21-2, Ex. B to Pls.' Mot. to Certify Class, Decl. of John Clark ¶ 4; Doc. 21-3, Ex. C to Pls.' Mot. to Certify Class, Decl. of Kevin Mallard ¶ 4.

[13] See Doc. 19, Pls.' 2ᵈ Am. Compl. p. 4.

performed during the week.[14]

B. **Procedural Background**

Plaintiffs filed their original complaint on April 28, 2016, alleging violations of the FLSA.[15] Plaintiffs filed an amended complaint on July 20, 2016, and a second amended complaint on October 11, 2016.[16]

Plaintiffs filed the pending motion to certify class on November 3, 2016, seeking to certify the following class: "all of Defendants' current and former employees employed as Onsite Supervisors and who were paid pursuant to a flat salary with no payment for hours worked beyond 40 hours before the filing of this Complaint up to the present."[17] Plaintiffs ask the court to (1) conditionally certify the proposed class; (2) authorize notice to potential class members; and (3) order Defendants to provide contact information for all onsite supervisors who were employed by Defendants within the last three years.[18]

Defendants did not respond to Plaintiffs' motion to certify class.

---

[14] See Doc. 21-1, Ex. A to Pls.' Mot. To Certify Class, Decl. of Cedric Ntuk ¶¶ 6-7; Doc. 21-2, Ex. B to Pls.' Mot. to Certify Class, Decl. of John Clark ¶¶ 6-7; Doc. 21-3, Ex. C to Pls.' Mot. to Certify Class, Decl. of Kevin Mallard ¶¶ 6-7.

[15] See Doc. 1, Pls.' Orig. Compl.

[16] See Doc. 10, Pls.' 1st Am. Compl.; Doc. 19, Pls.' 2d Am. Compl.

[17] See Doc. 21, Pls.' Mot. to Certify Class p. 1.

[18] See id. p. 14.

## II. Legal Standard

The FLSA requires covered employers to pay non-exempt employees for hours worked in excess of defined maximum hours. 29 U.S.C. § 207(a). It allows employees to bring an action against their employers for violation of its hour and wage provisions. See 29 U.S.C. §§ 215-216. An employee may bring this action against his employer on "behalf of himself . . . and other employees similarly situated. No employee shall be a party plaintiff to any such an action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). Courts have the authority to implement the representative action process by facilitating notice to potential plaintiffs, in other words, to persons alleged to be "similarly situated" to the named plaintiff(s). Hoffman-La Roche, Inc. v. Sperling, 493 U.S. 165, 171-74 (1989).

In the Fifth Circuit, the determination of whether plaintiffs are similarly situated is generally made by using one of two analyses: (1) the two-step analysis described in Lusardi v. Xerox Corp., 118 F.R.D. 351, 359 (D.N.J. 1987); or (2) the "spurious class action" analysis described in Shushan v. Univ. of Colo., 132 F.R.D. 263 (D. Colo. 1990). See Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1216 (5th Cir. 1995) (expressly declining to decide which

of the two analyses is appropriate).[19]

Under the Lusardi approach, the court first "determines whether the putative class members' claims are sufficiently similar to merit sending notice of the action to possible members of the class." Acevedo v. Allsup's Convenience Stores, Inc., 600 F.3d 516, 519 (5th Cir. 2010) (citing Mooney, 54 F.3d at 1213-14). The court makes this determination by using a fairly lenient standard, requiring only "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." Mooney, 54 F.3d at 1214 & n.8. If the court determines that the employees are similarly situated, then notice is sent and new plaintiffs may "opt in" to the lawsuit. Acevedo, 600 F.3d at 519 (citing Mooney, 54 F.3d at 1214). Next, once discovery has largely been completed and, thus, more information on the case made available, the court makes a final determination on whether the plaintiffs are similarly situated and whether they can proceed together in a single action. Id.

According to the Fifth Circuit, the Shushan approach, known as the "spurious class action" analysis, is similar to the class certification procedure used under Federal Rule of Civil Procedure 23 ("Rule 23"):

> Shushan espouses the view that [29 U.S.C. § 216(b)

---

[19] Mooney was an action under the Age Discrimination in Employment Act ("ADEA"), but it is informative here because the ADEA explicitly incorporates Section 216(b) of the FLSA to also provide for an "opt-in" class action procedure for similarly-situated employees. See Mooney, 54 F.3d at 1212.

6

> ("Section 216(b)")] merely breathes new life into the so-called "spurious" class action procedure previously eliminated from [Rule 23]. Building on this foundation, the court determined that Congress did not intend to create a completely separate class action structure for the FLSA . . . context, but merely desired to limit the availability of Rule 23 class action relief under . . . [the FLSA]. In application, the court determined that Congress intended the "similarly situated" inquiry to be coextensive with Rule 23 class certification. In other words, the court looks at "numerosity," "commonality," "typicality" and "adequacy of representation" to determine whether a class should be certified. Under this methodology, the primary distinction between a . . . [FLSA] representative action and a [Rule 23] class action is that persons who do not elect to opt-in to the . . . [FLSA] representative action are not bound by its results. In contrast, Rule 23 class members become party to the litigation through no action of their own, and are bound by its results.

Mooney, 54 F.3d at 1214.

The Fifth Circuit has not ruled which method the courts should use to determine whether plaintiffs are sufficiently similarly situated to advance their claims together in a single action under Section 216(b). Acevedo, 600 F.3d at 518-19. Although it has stated that not all class action standards are applicable to Section 216(b) actions, the court has explicitly left open the question of whether the Lusardi approach, the Shushan approach, or a third approach should be used in determining whether employees' claims are sufficiently similar to support the maintenance of a representative action. Id. (citing Mooney, 54 F.3d at 1216; LaChapelle v. Owens-Ill., Inc., 513 F.2d 286, 288 (5th Cir. 1975)).

However, most courts in this district follow the Lusardi approach in suits brought under Section 216(b). See, e.g.,

7

Tolentino v. C & J Spec-Rent Servs., Inc., 716 F. Supp.2d 642, 646 (S.D. Tex. 2010) (collecting cases). The Lusardi approach is consistent with Fifth Circuit dicta stating that the two-step approach is the typical manner in which these collective actions proceed. Sandoz v. Cingular Wireless LLC, 553 F.3d 913, 915 n.2 (5th Cir. 2008). The Fifth Circuit has also stated that "[t]here is a fundamental, irreconcilable difference between the class action described by Rule 23 and that provided for by [Section 216(b)]," in other words, the "opt out" procedure for class members under Rule 23 as opposed to the "opt in" procedure under Section 216(b). LaChapelle, 513 F.2d at 288; see also Donovan v. Univ. of Tex. at El Paso, 643 F.2d 1201, 1206 (5th Cir. 1981) ("The FLSA procedure, in effect, constitutes a congressionally developed alternative to the [Rule 23] procedures."). This court, therefore, will analyze Plaintiff's claims using the Lusardi method.

The present case is at the "notice stage" of the Lusardi analysis. At this stage, the court's decision is "made using a fairly lenient standard;" a plaintiff need only make a minimum showing to guide the court's determination whether to issue notice to potential class members. Mooney, 54 F.3d at 1214.

In the absence of Fifth Circuit guidance on the appropriate test to use at the notice stage of the Lusardi analysis, courts are split on the appropriate elements to consider in determining whether to grant conditional certification. Some courts use three

8

elements, requiring the plaintiff to show that: (1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit. See, e.g., Cantu v. Vitol, Inc., No. H-09-0576, 2009 WL 5195918, at *4 (S.D. Tex. Dec. 21, 2009) (unpublished); Tolentino, 716 F. Supp.2d at 653. Other courts, however, have rejected the third, non-statutory element. See, e.g., Jones v. Cretic Energy Servs., LLC, 149 F. Supp.3d 761, 768 (S.D. Tex. 2015); Dreyer v. Baker Hughes Oilfield Operations, Inc., No. H-08-1212, 2008 WL 5204149, *3 (S.D. Tex. Dec. 11, 2008) (unpublished); Heckler v. DK Funding, LLC, 502 F. Supp.2d 777, 780 (N.D. Ill. 2007).

This court is persuaded by the latter group of cases that have rejected the third element, as it is not statutorily required. See Jones, 149 F. Supp.3d at 762. This reasoning is consistent with the instruction from the Supreme Court that the FLSA be liberally construed to carry out its purposes. Id. (citing Tony & Susan Alamo Found. v. Sec'y of Labor, 471 U.S. 290, 296 (1985)). Therefore, the court finds that it is enough for Plaintiff to present evidence that there may be other aggrieved individuals who should be noticed without requiring evidence that those individuals actually want to join the lawsuit.

### III. Analysis

## A. Class Certification

Here, Plaintiffs argue that Defendants willfuly violated the FLSA by failing to pay Plaintiffs and all other onsite supervisors overtime compensation as the result of Defendants' "generally applicable policies or practices."[20] Defendants did not respond to Plaintiffs' request for conditional class certification.

In order to obtain a class certification, Plaintiffs must show "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination." Mooney, 54 F.3d at 1214 & n. 8. Plaintiffs must provide evidence to establish a reasonable belief that aggrieved individuals exist and that the aggrieved individuals are similarly situated. Cantu, 2009 WL 5195918, at *4.

To meet their burden, Plaintiffs are required to first show that there are aggrieved individuals. In this case, the declarations provide substantial allegations that there are aggrieved individuals as required under the Lusardi analysis. See Mooney, 54 F.3d at 1214 & n.8; Tolentino, 716 F. Supp.2d at 653 (finding that two declarations, a declaration from the plaintiff, and the complaint "sufficiently state[d] a claim against Defendants" so that "Plaintiffs [] satisfied their burden"). In their declarations, Plaintiffs put forth detailed information about the nature of their positions as onsite supervisors. Additionally,

---

[20] See Pls.' 2ᵈ Am. Compl. p. 6.

Plaintiffs averred that they often worked "well over forty hours per week" and "frequently worked on Saturdays" but were never paid overtime for these additional hours.[21] The court finds that these facts demonstrate the existence of aggrieved individuals who were subject to Defendants' policy to exempt them from overtime pay.

The second element Plaintiffs must establish in meeting their burden is that these aggrieved individuals are similarly situated. Plaintiffs averred that they all held the same position, worked similar hours, had the same job responsibilities, and were paid a flat salary for each week with no overtime compensation. Defendants do not dispute that the putative class members all worked as onsite supervisors. Through this evidence, Plaintiffs have shown that putative class members are similarly situated, as they all had the same position and were subject to the same policy of being paid a salary with no overtime compensation.

Based on the foregoing, the court finds Plaintiffs have provided substantial allegations demonstrating that the putative class members were victims of a uniform policy or plan. Therefore, Plaintiffs have met their burden under the Lusardi analysis.

B.  **Notice Process**

Plaintiffs ask for the court to judicially approve and order notice sent to putative class members through first-class mail and

---

[21] See Doc. 21-1, Ex. A to Pls.' Mot. To Certify Class, Decl. of Cedric Ntuk ¶¶ 5-6; Doc. 21-2, Ex. B to Pls.' Mot. to Certify Class, Decl. of John Clark ¶¶ 5-6; Doc. 21-3, Ex. C to Pls.' Mot. to Certify Class, Decl. of Kevin Mallard ¶¶ 5-6.

email.  In order to provide notice, Plaintiffs request that Defendants provide to Plaintiffs' counsel, in usable electronic format, all names, addresses, phone numbers, dates of birth, email addresses, and dates and locations of work for the putative class members.  Plaintiffs are seeking a ninety-day notice period to allow other putative class members to join the case.  Defendants have made no objections to Plaintiffs' proposed notice plan.

The court finds that the proposed notice accurately describes Plaintiffs' legal claim and clearly advises opt-in candidates how they may consent to join the action.  It also apprises potential opt-ins of the prohibition against retaliation or discrimination for participation in this action.  For these reasons, the court finds the notice to be fair and adequate.  However, the court finds that there is no explanation of the need for a ninety-day opt-in period or production of potential opt-ins' dates of birth.  Therefore, the opt-in period will be reduced to sixty days from the date notice is mailed.  Dates of birth need not be disclosed.

### IV.  Conclusion

Based on the foregoing, the court **GRANTS** Plaintiffs' motion to certify class.  The court **CERTIFIES** this matter as a collective action under 29 U.S.C. § 216(b) with respect to the following class:

> All of Taylor Smith Consulting, LLC's current and former employees employed as onsite supervisors and who were paid pursuant to a flat salary with no

> overtime payment for hours worked beyond 40 hours during the last three years.

Defendants shall provide Plaintiffs, within fourteen days of this opinion, with a list of verified contact information, including names, last known addresses, phone numbers, email addresses, and dates and locations of employment for all onsite supervisors who were employed by Defendants within the last three years.

Plaintiffs shall have fourteen days from the receipt of this information to mail the proposed notice to the potential class members. The opt-in period shall be sixty days from the date the notice is mailed.

**SIGNED** in Houston, Texas, this 20th day of April, 2017.

_____
U.S. MAGISTRATE JUDGE