IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

<table>
<tr><td>CEDRIC NTUK, JOHN CLARK<br>DRACHAN JOHNSON, and KEVIN<br>MALLARD on behalf of themselves<br>and all others similarly<br>situated,<br><br>       Plaintiffs,<br><br>v.<br><br>TAYLOR SMITH CONSULTING, LLC<br>and TRACY T. SMITH,<br><br>       Defendants.</td><td>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§</td><td><br><br><br><br><br><br><br><br>CIVIL ACTION NO. H-16-1165</td></tr>
</table>

<u>**MEMORANDUM OPINION**</u>

Pending before the court[1] is Defendants Taylor Smith Consulting, LLC ("TSC") and Tracy T. Smith's ("Smith") (collectively, "Defendants") Motion for Summary Judgment (Doc. 25), Plaintiffs' Motion to Strike (Doc. 27), and Plaintiffs' Cross-Motion for Summary Judgment (Doc. 28). The court has considered the motions, the responses, all other relevant filings, and the applicable law. For the reasons set forth below, the court **DENIES** Defendants' motion for summary judgment, **DENIES** Plaintiffs' motion to strike, and **DENIES** Plaintiffs' cross-motion for summary judgment.

## I. Case Background

Plaintiffs Cedric Ntuk ("Ntuk"), John Clark ("Clark"), Drachan

---

[1] The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. <u>See</u> Doc. 9, Ord. Dated July 15, 2016.

Johnson ("Johnson"), and Kevin Mallard ("Mallard") (collectively, "Plaintiffs") filed this action alleging that Defendants violated the Fair Labor Standards Act[2] ("FLSA") by misclassifying them as exempt employees and failing to pay overtime.[3]

## A.  Factual Background

Waste Management hired TSC as an independent contractor "to provide staffing services for trash hauling," including "supplying trained and qualified temporary [labor] to perform work as requested by Waste Management" and "performing all hiring, firing, discipline, training and other responsibilities necessary to discharge its legal obligations as the employer of the Personnel supplied to Waste Management."[4]  Smith was the chief executive officer ("CEO") of TSC.[5]  Ntuk, Clark, and Mallard were hired as onsite supervisors for TSC; Johnson worked as a recruiter for TSC.[6]  As onsite supervisors, Ntuk, Clark, and Mallard were located at the Pasadena Waste Management facility and supervised helpers who were hired to work on Waste Management's trucks and haul trash.[7]

_____

[2]      See 29 U.S.C. §§ 201-219.

[3]      See Doc. 1, Pls.' Compl.; Doc. 19, Pls.' 2[d] Am. Compl. p. 1.

[4]      Doc. 25-1, Ex. A to Defs.' Mot. for Summ. J., Aff. of Def. Smith p. 1; Doc. 28-5, Ex. E to Pls.' Cross-Mot. for Summ. J., Agreement Between Waste Management & TSC p. 2.

[5]      See Doc. 25-1, Ex. A to Defs.' Mot. for Summ. J., Aff. of Def. Smith p. 1.

[6]      See id.

[7]      See id. pp. 1-2.

## 1. Defendants' Evidence

Smith averred that Plaintiffs were paid weekly salaries that were unaffected by the number of hours they worked.[8]  Pay stubs revealed that on a weekly basis, Ntuk was paid $520, Clark was paid $560, Johnson was paid $605.77, and Mallard[9] was paid $522.[10]  As onsite supervisors, Smith stated that Ntuk, Clark, and Mallard did not perform manual labor and had the following primary duties:

- hiring, dismissal, and supervising other employees of [TSC];
- supervising more than 2 other employees of [TSC];
- [performing] administrative, non-manual work that was directly related to [TSC]'s business operations and management;
- interviewing prospective employees of TSC and directing them to their duties;
- managing all aspects pf [sic] the supervision of [TSC] employees onsite to fulfill the proper amount of coverage required under the contract;
- ensuring that the adequate employees were onsite for work duties, assigning employees to trucks for trash hauling, scheduling employees for work, relieving employees, ensuring that safety regulation [sic] were followed, training and being a point of contact between [TSC] and Waste Management
- going out and checking on work performance of helpers, returning helpers to base site [sic] that were in distress, taking additional workers to trucks, doing

---

[8]    See id.

[9]    In his deposition, Mallard contends that he was not paid on a salary basis and that the amount on his pay stubs was incorrect because he was getting paid the same thing no matter how many hours he worked.  See Doc. 25-5, Ex. E to Defs.' Mot. for Summ. J. pp. 45-46.

[10]    See Doc. 25-2, Ex. B to Defs.' Mot. for Summ. J., Pl. Ntuk's Pay Stubs pp. 1-2; Doc. 25-2, Ex. B to Defs.' Mot. for Summ. J., Pl. Clark's Pay Stubs pp. 1-4; Doc. 25-2, Ex. B to Defs.' Mot. for Summ. J., Pl. Johnson's Pay Stubs pp. 1-6; Doc. 25-2, Ex. B to Defs.' Mot. for Summ. J., Pl. Mallard's Pay Stubs pp. 1-5.  On an annual basis, Ntuk was paid $27,040.00, Clark was paid $29,120.00, Johnson was paid $31,500.00, and Mallard was paid $27,144.00.  See Doc. 25-1, Ex. A to Defs.' Mot. for Summ. J., Aff. of Def. Smith p. 1.

performance reviews.  [Ntuk, Clark, and Mallard] were responsibility for logging and verifying helpers hours of working, reporting the hours that helpers worked to the home office of TSC, correcting and reporting hours of helpers, picking up and delivering paychecks to the helpers.[11]

In terms of their day-to-day responsibilities, Smith averred that Clark, Ntuk, and Mallard:

[met] with Waste Management (WM) onsite and [communicated] with WM to coordinate the activities and number of employees and schedule the employees needed to insure that the hauling trucks had enough TSC employees to man the trucks.  [Ntuk, Clark, and Mallard] would sign in the [TSC] employee [sic] classified as "Helpers" and make sure that they had adequate safety equipment for the work.   [Ntuk, Clark, and Mallard] would assign the helpers to their trucks.   If there were not enough workers onsite [Ntuk, Clark, and Mallard] would contact additional helpers to come to work.   After the trucks were staffed, [Ntuk, Clark, and Mallard] would tend to more desk work such as contacting the home office of TSC on the daily activities and any issues, obtaining additional supplies from the home office, interviewing and hiring additional workers that applied for work onsite and maintaining and completing paperwork for TSC.[12]

Smith testified to the fact that Ntuk, Mallard, and Clark were the "primary representative[s]" of TSC onsite and had the power to hire and fire helpers.[13]   The summary judgment evidence includes emails in which Ntuk informed Defendants that he was going to fire a

---

[11]     Doc. 25-1, Ex. A to Defs.' Mot. for Summ. J., Aff. of Def. Smith pp. 1-3.

[12]     Id. pp. 2-3.

[13]     See id. p. 3.

4

helper.[14]  As a recruiter, Johnson's duties were to find and make recommendations of prospective employees to TSC's main office.[15]

The TSC letter offering employment to Ntuk, Mallard, and Clark outlined that their "initial tasks" for TSC would include: (1) ensuring that the site had the proper number of helpers; (2) training helpers on a weekly basis and verifying that they had been properly trained and equipped before starting work; (3) tracking time worked and submitting the time logs to payroll; (4) "[r]eleas[ing] an employee from his/her job assignment upon request [of Waste Management or TSC's administrative office]"; (5) performing routine quality assurance checks on the routes; and (6) upon  termination of a helper before his shift ended, finding a replacement and transporting the terminated helper to his home or vehicle.[16]

## 2. Plaintiffs' Testimony

Ntuk testified that he saw his role as a "middle man" rather than a supervisor, stating that he merely told workers to which trucks they had been assigned, "cop[ied] and pasted the payroll," and observed trucks for Waste Management; his primary role,

---

[14]     See Doc. 25-2, Ex. B to Defs.' Mot. for Summ. J., Email from Pl. Ntuk Dated Feb. 17, 2016 p. 1 ("I told him I was going to fire Mr. Muniz").

[15]     See Doc. 25-1, Ex. A to Defs.' Mot. for Summ. J., Aff. of Def. Smith p. 2.

[16]     See Doc. 25-2, Ex. B to Defs.' Mot. for Summ. J., Pl. Ntuk's Offer Ltr. pp. 1-2; Doc. 25-2, Ex. B to Defs.' Mot. for Summ. J., Pl. Clark's Offer Ltr. pp. 1-2; Doc. 25-2, Ex. B to Defs.' Mot. for Summ. J., Pl. Mallard's Offer Ltr. pp. 1-2.

according to his testimony, was to staff the trucks.[17]  Ntuk explained that he had no control over which trucks the helpers were assigned.[18]  Ntuk testified that he would ensure that the site had the necessary staffing needed for the day, communicate with Waste Management's field operations team and TSC, and conduct training sessions for helpers upon request of TSC.[19]  Ntuk never interviewed applicants and did not train them before they commenced employment.[20]  Additionally, Ntuk asserted that he did not have the power to fire helpers and denied firing anyone, but admitted he did perform quality checks on helpers by observing them while they were working.[21]

In terms of his daily duties, Mallard stated that he would facilitate a roll call to check attendance and would ensure that employees were wearing their required gear.[22]  Mallard testified that if there was a shortage of workers for the day, he would refer to a list of substitutes and begin calling from the top of the list.[23]  If the onsite supervisors noticed that someone was not

---

[17]    See Doc. 25-3, Ex. C to Defs.' Mot. for Summ. J., Dep. of Ntuk p. 42-44.

[18]    See id. pp. 44, 59.

[19]    See id. pp. 47-48.

[20]    See id. p. 49.

[21]    See id. p. 50-51.

[22]    See Doc. 25-5, Ex. E to Defs.' Mot. for Summ. J., Dep. of Mallard p. 28.

[23]    See id. p. 24.

completing his or her job properly, then the onsite supervisor would report it to that person's Waste Management supervisor and he or she would address the issue.[24] Mallard testified that no one reported to him and that he had no power to fire employees.[25] Rather, Mallard and the other onsite supervisors could report an underperforming employee to his respective Waste Management supervisor who would make the decision whether or not to fire him.[26]

Johnson testified that she was paid time and a half for overtime and that she was paid by TSC for all of the hours that she requested.[27] Several minutes later she clarified that she was underpaid and seeks the pay deficiency in this suit.[28] Johnson averred that she did not make the final decision on whether to hire a prospective candidate.[29]

## B. **Procedural Background**

On April 28, 2016, Plaintiffs filed their complaint alleging

---

[24]     See id. p. 27.

[25]     See id. pp. 24, 29; Doc. 28-3, Ex. C to Pls.' Resp., Dep. of Mallard pp. 25, 27.

[26]     See Doc. 28-3, Ex. C to Pls.' Resp., Dep. of Mallard p. 25. If a performance issue arose during a shift, for example, if a helper forgot the required safety equipment, then Mallard would inform that employee's Waste Management shift supervisor, who would handle the issue. See Doc. 25-5, Ex. E to Defs.' Mot. for Summ. J., Dep. of Mallard p. 28.

[27]     See Doc. 25-4, Ex. D to Defs.' Mot. for Summ. J., Dep. of Johnson pp. 31-33.

[28]     See Doc. 28-4, Ex. D to Pls.' Resp., Dep. of Johnson p. 42.

[29]     See id.

violations of the FLSA.[30]  Plaintiffs amended their complaint on July 20, 2016, and on October 11, 2016, with leave of court, amended their complaint again to add Smith as a defendant.[31]  On November 3, 2016, Plaintiffs filed a motion to certify a class, which was unopposed by Defendants.[32]  The court granted the motion, certifying the following class:

> All of Taylor Smith Consulting, LLC's current and former employees employed as onsite supervisors and who were paid pursuant to a flat salary with no overtime payment for hours worked beyond forty hours during the last three years.[33]

On May 4, 2017, Defendants filed the pending motion for summary judgment, contending that Plaintiffs were exempt under the FLSA.[34]  Plaintiffs filed objections to the motion for summary judgment and the evidence attached thereto, asking the court to strike the motion for summary judgment and Smith's affidavit.[35]  Plaintiffs also filed a response and a cross-motion for partial summary judgment, contending that Defendants did not properly plead the administrative and executive exemptions, and, even if the

---

[30]     See Doc. 1, Pls.' Compl.

[31]     See Doc. 10, Pls.' 1st Am. Compl.; Doc. 14, Pls.' Mot. for Leave to File 2d Am. Compl.; Doc. 19, Pls.' 2d Am. Compl.

[32]     See Doc. 21, Pls.' Mot. to Certify Class.

[33]     Doc. 24, Mem. Op. & Ord. Dated Apr. 20, 2017.

[34]     See Doc. 25, Defs.' Mot. for Summ. J.

[35]     See Doc. 27, Pls.' Objs. to Defs.' Summ. J. & Summ. J. Ev.

exemptions were properly pled, they did not apply in this case.[36] Defendants subsequently filed a reply in support of their motion and a response to Plaintiffs' cross-motion.[37]

## II.  Plaintiffs' Objections and Motion to Strike

Plaintiffs ask the court to strike Defendants' motion for summary judgment, contending that: (1) Defendants failed to plead the exemptions in their answer; and (2) Defendants did not provide specific record citations in support of their motion for summary judgment.  Plaintiffs also ask the court to strike Smith's affidavit, arguing that it does not comply with the Federal Rules of Evidence and contains false statements.

## A.  <u>Affirmative Defenses</u>

In Plaintiffs' motion to strike and in their response to Defendants' motion for summary judgment, they contend that Defendants failed to raise the administrative and executive exemptions in their answer.  Defendants respond that the administrative exemption was properly pled, and, alternatively, Defendants requested leave of court to file an amended answer adding the word "administrative" to cure any uncertainty that this exemption had been pled.

Traditionally, "[a]n affirmative defense is subject to the

---

[36]    <u>See</u> Doc. 28, Pls.' Resp. to Defs.' Mot. & Cross-Mot. for Part. Summ. J. on Liab.

[37]    <u>See</u> Doc. 32, Defs.' Reply in Support of their Mot. for Summ. J.; Doc. 33, Defs.' Resp. to Pls.' Cross-Mot. for Summ. J.

same pleading requirements as is the complaint." Woodfield v. Bowman, 193 F.3d 354, 362 (5th Cir. 1999)(citing Conley v. Gibson, 355 U.S. 41 (1957)). At the time Woodfield was decided, the standard for pleadings in the complaint was "fair notice." Conley v. Gibson, 355 U.S. 41, 47 (1957). After Woodfield, the Supreme Court heightened the standard for pleadings to require "enough facts to state a claim for relief that is plausible on its face" to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). The plausibility standard does not require "detailed factual allegations," but it must indicate the plausibility of the claims asserted and raise the "right to relief above speculative level." Id. at 555; see also Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009).

District courts are divided about whether the fair notice or the Twombly and Iqbal standard applies. See, e.g., United States ex rel. Parikh v. Citizens Med. Ctr., 302 F.R.D. 416, 418 (S.D. Tex. 2014), United States v. Brink, Civil Action No. C-10-243, 2011 WL 835828, at *3 (S.D. Tex. Mar. 4, 2011)(unpublished); Herrera v. Utilimap Corp., Civil Action No. H-11-3851, 2012 WL 3527065, at *2 (S.D. Tex. Aug. 14, 2012)(unpublished); E.E.O.C. v. Courtesy Building Servs., Inc., Civil Action No. 3:10-CV-1911-D, 2011 WL 2080408, at *2 (N.D. Tex. Jan. 21, 2011)(unpublished); Joe Hand Promotions, Inc. v. HRA Zone, L.L.C., Civil Action No. A-13-CA-359

LY, 2013 WL 5707810, at *2 (W.D. Tex. Oct. 18, 2013)(unpublished).
However, in Parikh, the court cited the following three compelling
reasons to utilize the fair notice standard: (1) plaintiffs have
more time to prepare their complaints while defendants have twenty-
one days to serve an answer; (2) "the text of the rules, and the
functional demands of claims and defenses, militate against
requiring factual specificity affirmative defenses;" (3) and
motions to strike "only prolong pre-discovery motion practice; as
such, raising the standard for pleading affirmative defenses would
only encourage more motions to strike." Parikh, 302 F.R.D. at 418
(citing Floridia v. DLT 3 Girls, Inc., Civil Action No. 4:11-CV-
3624, 2012 WL 1565533, at *2 (S.D. Tex. Mar. 20,
2012)(unpublished)).

In their second amended answer, Defendants state that
Plaintiffs were exempt employees, paid more than the $455 rate set
by the FLSA, "agreed through a Letter of Engagement with [TSC] to
exercise a wide level of discretion and independent judgment to
supervise Helpers at the Pasadena Facility; give truck assignment,
engage as a liason between [Waste Management] and [TSC], to relieve
Helpers of their duties, hire, suspend and terminate Helpers,
handle payroll logs and checks, and performing safety inspections
of helpers," and "the Plaintiffs through his [sic] pay grade, job
duties, and the carrying out of his duties and independent
judgment, the Plaintiff was an exempt employee under the FLSA

11

standards."[38]

Defendants' statements in their second amended answer clearly alleged the three elements required for the administrative exemption to apply. They alleged that Plaintiffs were paid at least $455 per week, that Defendants performed office or non-manual work such as handling payroll, hiring, and firing, and that they exercised discretion and independent judgment. Regardless of which pleading standard is applicable to affirmative defenses, Defendants adequately pled the administrative exemption in their answer before it was amended. While the amendment helped to clarify that they were pleading the administrative exemption, the original answer contained statements clearly indicating that they were asserting the administrative exemption as an affirmative defense. Therefore, the court finds that Defendants adequately pled the administrative exemption as an affirmative defense.

As to the executive exemption, it is unclear whether Defendants actually meant to assert the exemption in this case. While Defendants did allege that Plaintiffs were paid $455 a week and had hiring and firing power, there is no allegation in the second or third amended answer that Plaintiffs' primary duty was management or that they regularly directed the work of at least two employees, as required by the executive exemption. And, while Defendants make passing mention of the elements of the executive

---

[38]     See Doc. 20, Defs.' 2^d Am. Ans. p. 4.

exemption in the beginning of their motion for summary judgment,[39]

they later refer to it as the administrative exemption, and, their

analysis focuses on the elements of the administrative exemption,

not the executive exemption.  Additionally, upon amendment of the

answer, Defendants merely added the word "administrative" and made

no mention of the executive exemption.  Therefore, the court finds

that the executive exemption was not adequately pled or asserted

and will focus solely on whether the administrative exemption

applies in this case.

## B.   <u>Citations to Evidence</u>

Plaintiffs complain that Defendants generally cite to

documents in their motion for summary judgment, rather than

identifying with more specificity the evidence that supports their

motion.  This statement is unfounded.  Throughout the motion for

summary judgment, Defendants cite to affidavits and depositions,

providing the court and Plaintiffs with specific page numbers to

demonstrate the source of their factual support.  Therefore, this

---

[39]     In the motion for summary judgment, Defendants state "Under the
[FLSA], the Plaintiffs are classified as exempt and not entitled to overtime
compensation as alleged.  Specifically, under 29 C.F.R. 541.100, to qualify for
the *administrative* employee exemption, all of the following tests must be met:
[(1)] The employee must be compensated on a salary basis (as defined in the
regulations) at a rate not less than $455 per week or $23,600.00 per year; [(2)]
The employee's primary duty must be managing the enterprise, or managing a
customarily recognized department or subdivision of the enterprise; [(3)] The
employee must customarily and regularly direct the work of at least two or more
other full-time employees or their equivalent; and [(4)] The employee must have
the authority to hire or fire other employees, or the employee's suggestions and
recommendations as to the hiring, firing, advancement, promotion or any other
change of status of other employees must be given particular weight.  All of the
Plaintiffs have met the standard for an *administrative* exemption . . . ." Doc.
25, Defs.' Mot. for Summ. J. p. 3 (emphasis added).

objection is overruled.

Based on the foregoing, the court **DENIES** Plaintiffs' motion to strike Defendants' motion for summary judgment.

## C.  Evidentiary Issues

Plaintiffs lodge a number of evidentiary objections to Defendants' motion for summary judgment and Smith's accompanying affidavit.

### 1.  Legal Standard

A party must support its factual positions on summary judgment by citing to particular evidence in the record.  Fed. R. Civ. P. 56(c)(1).  Federal Rule of Civil Procedure 56(c)(2) allows a movant to object to exhibits that "cannot be presented in a form that would be admissible in evidence" under the Federal Rules of Evidence.

Only relevant evidence is admissible.  Fed. R. Evid. 402. Relevant evidence has a "tendency to make a fact more or less probable than it would be without the evidence" and relates to a fact "of consequence in determining the action."  Fed. R. Evid. 401.  Affidavits supporting summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  The court may strike an affidavit that violates this rule.  Akin v. Q-L Investments, Inc., 959 F.2d 521, 530 (5th Cir. 1992).  Conclusory

allegations, unsubstantiated assertions, improbable inferences, and speculation are not competent evidence. <u>Roach v. Allstate Indem. Co.</u>, 476 F. App'x 778, 780 (5th Cir. 2012)(unpublished)(citing <u>S.E.C. v. Recile</u>, 10 F.3d 1093, 1097 (5th Cir. 1993)).

Hearsay is not admissible evidence. Fed. R. Evid. 802. Hearsay is an out-of-court statement that is offered for "the truth of the matter asserted in the statement." Fed. R. Evid. 801. Statements offered against an opposing party made "by the party in an individual or representative capacity" are not hearsay." Fed. R. Evid. 801(d)(2). The Federal Rules of Evidence also list exceptions to the rule against hearsay. Fed. R. Evid. 803-804, 807.

For purposes of authentication, Federal Rule of Evidence 901(a) requires "evidence sufficient to support a finding that the item is what the proponent claims it is." Circumstantial evidence, such as the document itself and the circumstances surrounding its discovery, is sufficient for authentication. <u>In re McLain</u>, 516 F.3d 301, 308 (5th Cir. 2008). The Fifth Circuit "does not require conclusive proof of authenticity before allowing the admission of disputed evidence . . . It merely requires some evidence which is sufficient to support a finding that the evidence in question is what its proponent claims it to be." <u>Id.</u> (quoting <u>United States v. Arce</u>, 997 F.2d 1123, 1128 (5th Cir. 1993), and prior case law).

**2. Smith's Affidavit**

15

Plaintiffs object to Smith's affidavit, asserting that it violates Federal Rules of Evidence ("Rule") 602, 802, and 901(9) and contains misleading statements.

Pointing first to Rule 602, Plaintiffs take issue with Smith's statements as to Plaintiffs' job duties on the basis that she lacked personal knowledge. Rule 602 limits a witness to testifying about matters of which she has personal knowledge. Fed. R. Evid. 602. In her affidavit, Smith explains that her knowledge comes from performance of her job as the CEO of TSC. In response to the motion to strike, Defendants attach supplemental affidavits from Smith, further detailing the basis for her personal knowledge of Plaintiffs' duties, and from Mike Green, the supervisor for Ntuk, Clark, and Mallard. The court finds that the affidavits satisfy Rule 602's requirement of personal knowledge. Plaintiffs' objection is overruled.

Plaintiffs next contend that Smith's affidavit contains hearsay statements, violating Rule 802, as she "references to her company's contractual obligations to her client Waste Management and testifies that Ntuk and Mallard were obligated to act as 'supervisors' and as 'eyes & ears' on the ground on behalf of [TSC] when dealing with Waste Management."[40] Plaintiffs also complain that Smith referenced contractual duties without attaching the contract between TSC and Waste Management, which would provide the

---

[40]    Doc. 27, Pls.' Objs. to Defs.' Summ. J. & Summ. J. Ev. p. 4.

best evidence for her knowledge of Plaintiffs' duties.

Rule 801(c) defines hearsay as an out-of-court statement of another offered for the truth of the matter asserted. Fed. R. Evid. 801(c). There is no such out-of-court statement contained in Smith's affidavit. As to Plaintiffs' argument that Smith's characterization of Plaintiffs' duties as supervisory lacked a factual foundation, the court finds that this, too, is without merit. Smith's personal knowledge of their duties was established through her statement that she was the CEO of TSC, and Plaintiffs' argument that the contract is the best evidence of its obligations was cured when they attached the contract between Waste Management and TSC to their cross-motion for summary judgment. Plaintiffs' hearsay objections are overruled. Plaintiffs also argue that Smith's affidavit runs afoul of Rule 901(9), which sets forth how certain documents may be authenticated. Rule 901(9) applies to documentation of a process or system. Plaintiffs contend that "there should be some documentation, however, reflecting and memorializing each of these individuals' daily decision making," and without such documentation, her affidavit is untrustworthy.[41] As addressed above, as CEO of TSC, Smith may testify to Plaintiffs' job duties. Plaintiffs' objection is overruled.

Finally, Plaintiffs object that Smith's affidavit contains false and misleading statements. Plaintiffs challenge the

---

[41]     Id. pp. 4-5.

statement, "The prospective employee could apply, be interviewed and began [sic] work without very [sic] speaking to another Taylor Smith employee."[42]   Plaintiffs cite to TSC's job portal on its website and contend that Smith's statement is untrue because a prospective employee first had to pass a drug test and background check.   Plaintiffs argue that Smith's statement would violate TSC's duty of due diligence to Waste Management.   The attached printout from Defendants' website is unauthenticated and, without authentication, not proper summary judgment evidence.   Even if the website screen shot could be authenticated, it merely raises a fact issue that the jury must consider.

Plaintiffs also argue that Smith's statement that they had hiring and firing power is false, because Plaintiffs testified that they did not have that power.   To restate the obvious, it is not up to the court to weigh the evidence and decide who is telling the truth.   This is a fact question for the jury to decide.   Therefore, all of Plaintiffs' objections are overruled.

### III. Timeliness of Plaintiffs' Motion for Summary Judgment

In their response to Plaintiffs' cross-motion for summary judgment, Defendants contend that the motion was untimely because the dispositive motion deadline was May 5, 2017, and Plaintiffs did not file their cross-motion until May 25, 2017, and filed it

_____

[42]    Id. p. 5 (citing Ex. A to Defs.' Mot. for Summ. J., Aff. of Def. Smith p. 1).

without leave of court. In their cross-motion, Plaintiffs do not acknowledge that they missed the dispositive motion deadline. Plaintiffs do not offer any explanation for the late-filing of their motion and do not ask the court for an extension of the dispositive motion deadline. The court agrees that the motion was untimely and will treat Plaintiffs' cross-motion for summary judgment merely as a response to Defendants' motion for summary judgment, not as a summary judgment motion.

### IV. Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists on any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Stauffer v. Gearhart, 741 F.3d 574, 581 (5th Cir. 2014). A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001). To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party. See Royal v. CCC & R Tres Arboles, L.L.C., 736 F.3d 396, 400 (5th Cir. 2013)(quoting Anderson, 477 U.S. at 248).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings,

depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues. Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992). The movant may meet this burden by demonstrating an absence of evidence in support of one or more elements of the case for which the nonmovant bears the burden of proof. See Celotex Corp., 477 U.S. at 322; Exxon Corp. v. Oxxford Clothes, Inc., 109 F.3d 1070, 1074 (5th Cir. 1997). If the movant carries its burden, the nonmovant may not rest on the allegations or denials in the pleading but must respond with evidence showing a genuine factual dispute. Stauffer, 741 F.3d at 581 (citing Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007)).

## V. Analysis

The FLSA provides a general rule that an employer must pay its employees overtime compensation for hours worked in excess of forty per week. 29 U.S.C. § 207(a)(1); see also Vela v. City of Houston, 276 F.3d 659, 666 (5th Cir. 2001). An employee alleging a violation of the overtime requirement bears the burden of proving the following prima facie case, by a preponderance of the evidence: (1) that there exists an employer-employee relationship; (2) that there was engagement in activities within the coverage of the FLSA; (3) that the employee worked over forty hours within a workweek without overtime compensation; and (4) a definite amount of compensation is due. Reyes v. Texas Ezpawn, L.P., No. V-03-128, 2007 WL 3143315,

at * 1 (S.D. Tex. Oct. 24, 2007)(unpublished)(citing <u>Cash v. Conn Appliances, Inc.</u>, 2 F. Supp.2d 884, 892 (E.D. Tex. 1997)).

Under 29 U.S.C. § ("Section") 207(a), the FLSA requires covered employers to compensate nonexempt employees at overtime rates for time worked in excess of statutorily defined hours. Section 216(b) creates a cause of action for employees against employers violating the overtime compensation requirements. Section 213(a)(1) exempts employees occupying "bona fide executive, administrative, or professional" positions from the overtime requirements of Section 207. These terms "are [to be] defined and delimited from time to time by regulations of the Secretary [of Labor]." 29 U.S.C. § 213(a)(1).

While the decision whether an employee is exempt from the overtime compensation requirement is primarily a question of fact, the ultimate issue is a question of law. <u>Cheatham v. Allstate Ins. Co.</u>, 465 F.3d 578, 584 (5th Cir. 2006); <u>Lott v. Howard Wilson Chrysler-Plymouth, Inc.</u>, 203 F.3d 326, 330-31 (5th Cir. 2000). Defendants bear the burden of proof on affirmative defenses. <u>Cheatham</u>, 465 F.3d at 584 (citing <u>Vela</u>, 276 F.3d at 666). Exemptions to the overtime pay requirement are narrowly construed against the employer. <u>Id.</u>

The regulations provide that an exempt administrative employee is one: (1) compensated at a rate of not less than $455 per week; (2) [w]hose primary job duty is the performance of office or non-

manual work directly related to management or general business operations of the employer or the employer's customers; and (3) [w]hose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance. 29 C.F.R. § 541.200(a). The court considers each element in turn.

## A.   Compensation

In order to be considered an exempt administrative employee, an employer must pay the employee in excess of $455 per week. Plaintiffs' pay stubs and Smith's averments as to their salaries demonstrated that each was paid more than $455 per week. Plaintiffs do not dispute this in their response. Therefore, Defendants have met the first prong of the administrative exemption test.

## B.   Primary Job Duty

Turning to the second prong of the administrative exemption, the regulations require that in order to qualify for the exemption, an employee's primary duty must be "work directly related to the management or general business operations of the employer or the employer's customers." 29 C.F.R. § 541.201(a). The regulation further explains: "Work directly related to management or general business operations includes, but is not limited to, work in functional areas such as . . . personnel management; human resources; . . . labor relations; . . . and similar activities." 29 C.F.R. § 541.201(b). The court must focus on the actual day-to-

day activities of the employee and not the characterizations of those activities by the employee or the employer. <u>Reyes v. Texas Ezpawn, L.P.</u>, 459 F. Supp.2d 546, 553-54 (S.D. Tex. 2006).

The regulations further explain that to qualify for exemption from overtime, an employee's "primary duty" must be the performance of exempt work. 29 C.F.R. § 541.700(a). The regulation states:

> The term 'primary duty' means the principal, main, major or most important duty that the employee performs. . . . Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

29 C.F.R. § 541.700(a). The regulations caution that, while the amount of time spent performing exempt work is a useful guide in determining an employee's primary duty, time alone is not the sole factor and "nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work. Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion." 29 C.F.R. § 541.700(b).

Consistent with the regulations, the Fifth Circuit has held that, as a general rule, an employee's "primary duty" will typically require over fifty percent of his work time. <u>Lott</u>, 203 F.3d at 331. However, time is not the sole parameter to be

considered.  <u>Smith v. City of Jackson, Miss.</u>, 954 F.2d 296, 299 (5th

Cir. 1992).  Where an employee spends less than fifty percent of

his time on management duties, the court may find an employee to be

subject to the administrative exemption if other factors are

present, such as the relative importance of his managerial duties,

the frequency with which the employee exercises discretionary

power, the employee's relative freedom from supervision and how

that employee's wages compare to wages earned by employees

performing nonexempt work.  <u>Lott</u>, 203 F.3d at 331.

It is undisputed that Plaintiffs had the responsibility to

ensure that there were the proper number of helpers to staff Waste

Management's trucks.  However, the extent of their "management"

role is disputed.  Smith averred that they managed Waste Management

and other TSC employees, scheduled and assigned helpers to trucks,

hired and fired helpers, observed helpers, and checked and reported

helpers' hours.  Defendants also submitted an email in which Ntuk

discusses firing a certain employee.  However, Plaintiffs dispute

this, with Ntuk and Mallard testifying that his role as a

"supervisor" was in name only, that their primary role was to make

sure trucks were staffed, and that they had no firing power.

Mallard testified that he did not supervise anyone.  Therefore,

fact questions exist whether Plaintiffs' primary job duties were

managerial in nature.

**C.  <u>Independent Judgment and Discretion</u>**

The third prong of the administrative exemption requires Defendants to prove that Plaintiffs customarily and regularly exercised independent judgment and discretion in the performance of their job duties. <u>Heidtman v. Cty. of El Paso</u>, 171 F.3d 1038, 1042 (5ᵗʰ Cir. 1999). The regulations provide that to qualify for the administrative exemption, an employee's primary duty must involve the exercise of discretion and independent judgment with respect to matters of significance. 29 C.F.R. § 541.202(a). The exercise of discretion and judgment "involves the comparison and evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.202(a).

Factors to be considered are whether the employee "performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business," "whether the employee has the authority to commit the employer in matters that have significant financial impact," and "whether the employee investigates and resolves matters of significance on behalf of management." 29 C.F.R. § 541.202(b). The regulation cautions that employees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level. 29 C.F.R. § 541.202(c). In interpreting this prong of the administrative exemption, the Fifth Circuit has held that the

exercise of discretion and judgment must be with respect to matters of consequence, but need not be final, decision-making authority. Lott, 203 F.3d at 331.

Because the court already found that fact questions exist on the second prong, the court need not reach this prong. However, the court acknowledges that, as with the second prong, fact questions exist whether Plaintiffs exercised independent judgment and discretion. For example, it is disputed whether Plaintiffs had hiring and firing power and unclear how much decision-making power they had in their roles as onsite supervisors. Therefore, summary judgment for Defendants must be denied. Even if this court had considered Plaintiffs' late-filed motion, fact issues would require its denial.

## D.   **Plaintiff Johnson**

Defendants contend that summary judgment should be granted on the claims by Johnson, as she admitted in her deposition that Defendants owed or no money and that she fell under the administrative exemption because she was paid $605.77 per week. However, several minutes later she testified that she was owed money by Defendants and did not have hiring and firing power. The court cannot resolve this conflicting testimony via a summary judgment motion. Therefore, summary judgment is denied on Johnson's FLSA claims.

## VI.  Conclusion

Based on the foregoing, the court **DENIES** Defendants' motion for summary judgment, **DENIES** Plaintiffs' motion to strike, and **DENIES** Plaintiffs' cross-motion for summary judgment.

**SIGNED** in Houston, Texas, this 22nd day of March, 2018.

_____
U.S. MAGISTRATE JUDGE